*14 Curia, per
O’Neall, J.
The best definition of a riot is that given in 4th Burns’ Justice, Tit. Riot, sec. 1, p. 111. “ Where three persons or more shall assemble themselves together, with an intent mutually to assist one another against any who shall oppose them in the execution of some enterprize of a private nature, with force or violence against the peace1 or to the manifest terror of the people, whether the act intended were of itself lawful or unlawful, and execute their purpose,” it is a riot. The acts done in this case were an entry by the defendants and a negro, upon the land where the prosecutor was at work, and the cutting in pieces the house logs which he had cut. There was a show of force; for Jackson cut a club, and used some very threatening words. This, according to law, would have made even an act lawful in the beginning, a riot. Burns’ Justice, 4th sec. p. 113. That the defendants and the negro assembled with an intent mutually to assist one another, is plainly inferrable from the acts done. They came together ; Montgomery and the negro saw Jackson cut the club; heard his threats, and at his command cut up the house logs.
But the counsel for the defendants argued that the negro acted by the command of his master, and, according to law, could not be punished. There might originally have been much in this argument. But in the State vs. Thackam and Mayson, 1 Bay. 353, the very question now made was decided. In that ease it is stated, “ it apeared in evidence that they took a negro man with them, who was armed, as well as the defendants, and they were the only persons present when this outrage was committed. Harper and Holmes, the counsel for the defendants, took the ground that a negro was not, in point of law, such a person as could be capable of committing this offence.” The court, (consisting of Burke, Waties and Bay,) were clearly of opinion that a negro was, in contemplation of law, such a person as was capable of committing a riot, in conjunction' with white men. This decision upon the point made, conclusively settled that a negro, slave, whether acting under the command of his master or not, might be one of the three persons necessary in law to constitute the offence “ a riot.” That decision is commented upon and *15 approved in the State vs. Calder, 2 M’Cord, 463. It is true that Judge Nott, in speaking of the evidence in the case then in hand, thought it was not sufficient to so connect the negroes with the act done, as to make their presence enough to constitute it a riot. That, however, does not help the defendants here. For there, the acts done by the negroes, at the command of their mistress, were only incidentally mentioned, and not brought out by any direct inquiry as to the part which they took in the transaction. Here, the part taken by the negro was looked to as necessary to make out the offence; and, indeed, the act which he did, was the very object intended by the defendant, Jackson, in associating Montgomery and the slave with him. The motion is dismissed.
Richardson, Evans, Butler and Wardlaw, JJ, concurred.